# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0042-16T2
                A-4339-16T1
                A-4343-16T4
                A-4797-16T3

K.G.,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

C.C.,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

J.L.,
    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

APPROVED FOR PUBLICATION

January 24, 2019

APPELLATE DIVISION

_____

D.C.,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

> Argued September 24, 2018 – Decided January 24, 2019
>
> Before Judge Sabatino, Sumners, and Mitterhoff.
>
> On appeal from the New Jersey State Parole Board.
>
> Michael C. Woyce argued the cause for appellants (Murphy & Woyce, attorneys; Michael C. Woyce, on the briefs).
>
> Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel in A-0042-16 and A-4339-16; Melissa H. Raksa, Assistant Attorney General, of counsel in A-4343-16 and A-4797-16; Gregory R. Bueno, Deputy Attorney General, on the briefs in A-0042-16 and A-4797-16; Erica R. Heyer, Deputy Attorney General, on the brief in A-4339-16; Christopher C. Josephson, on the brief in A-4343-16).

    The opinion of the court was delivered by

MITTERHOFF, J.S.C. (temporarily assigned).

A-0042-16T2

Appellants K.G., C.C., J.L., and D.C. are convicted sex offenders who are monitored by respondent New Jersey State Parole Board (the "Board") as offenders who are subject to parole supervision for life ("PSL") under N.J.S.A. 2C:43-6.4. Each appellant challenges certain conditions of PSL that the Board has imposed upon them. Most of the challenged conditions involve restrictions on appellants' Internet use. The instant appeals follow in the wake of the New Jersey Supreme Court's decision in J.I. v. N.J. State Parole Bd., 228 N.J. 204 (2017), which addressed the parameters of the Board's authority to impose conditions restricting Internet access. The four appeals were calendared back-to-back, and we consolidate them for the purposes of this opinion.

For the reasons that follow, we affirm in part, reverse in part, and remand in part. In particular, we reach the following major legal conclusions: (1) the Board's imposition of Internet monitoring conditions upon PSL offenders, including the use of monitoring software, mandatory password disclosure, and unannounced device inspections, does not facially violate the constitutional protections against unreasonable searches or the constitutional rights to privacy; (2) the Board's use of the terms "Internet-capable device," "social networking service," "frequenting establishments whose primary purpose is the sale of alcohol," and "sexually-oriented websites, material, information or data" does

not violate due process under the void for vagueness doctrine; (3) all conditions restricting Internet access, including monitoring conditions, should be reasonably tailored to the circumstances of the individual offender, "taking into account such factors as the underlying offense and any prior criminal history, whether the Internet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety[,]" J.I., 228 N.J. at 224; and (4) in the administrative appeals process, PSL offenders are not entitled to discovery and are only entitled to a hearing when warranted based on "the timing of and justification for the Internet restriction, the severity and length of the restriction, whether facts are contested or uncontested, and whether credibility determinations must be made." Id. at 233.

## Table of Contents

I. (Background) ...................................................................................... 5
   A. (Background on PSL) ..................................................................... 5
   B. (Statutes and Regulations on Internet-Access Conditions) ................... 11
II. (Factual and Procedural Background) ..................................................... 18
   K.G. ........................................................................................... 18
   C.C. ........................................................................................... 21
   J.L. ............................................................................................. 23
   D.C. ........................................................................................... 27
III. (Legal Discussion) ............................................................................ 30
   A. (Constitutional Challenges to Monitoring Conditions) ......................... 31
   B. (As-Applied Challenges) ................................................................ 36

A-0042-16T2

K.G. ............................................................................................... 36

    Internet-Access Conditions ............................................................ 36

C.C. ............................................................................................... 40

    Internet-Access Conditions ............................................................ 40

    Procedural Due Process .............................................................. 41

J.L. ............................................................................................... 43

    Internet-Access Conditions ............................................................ 44

    Pornography Condition ............................................................... 45

    Alcohol Condition ................................................................... 47

    Void for Vagueness .................................................................. 48

    Procedural Due Process .............................................................. 50

D.C. ............................................................................................... 51

    Internet-Access Conditions ............................................................ 52

C. (Summary of Conclusions) .............................................................. 53

I.

(Background)

A.

(Background on PSL)

We begin with a discussion of the PSL statute and of the constitutional limits on the Board's ability to impose conditions of PSL restricting Internet access. "Community supervision for life was 'designed to protect the public from recidivism by defendants convicted of serious sexual offenses.'" Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 237-38 (2008) (quoting Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 184 (App. Div. 2004),

A-0042-16T2

certif. granted, 182 N.J. 140 (2004), appeal dismissed, 187 N.J. 487 (2006)).[1] Individuals who have been convicted of certain sexual offenses enumerated in N.J.S.A. 2C:43-6.4(a) must serve, in addition to any existing sentence, a special sentence of parole supervision for life commencing upon the offender's release from incarceration. N.J.S.A. 2C:43-6.4(a) and (b).

PSL offenders remain in the legal custody of the Commissioner of the Department of Corrections, are supervised by the Division of Parole, and are "subject to conditions appropriate to protect the public and foster rehabilitation." N.J.S.A. 2C:43-6.4(b). These conditions include general conditions that are imposed upon all PSL offenders and special conditions imposed upon individual PSL offenders that are "deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior." N.J.S.A. 30:4-123.59(b)(1); see also N.J.A.C. 10A:71-6.12(d) (listing general conditions); N.J.A.C. 10A:71-6.12(n) ("Additional special conditions may be imposed by the District Parole Supervisor . . . when it is the opinion that such conditions would reduce the likelihood of recurrence of criminal behavior."). A violation of a PSL condition

---

[1] In 2003, the Legislature amended N.J.S.A. 2C:43-6.4 to replace all references to "community supervision for life" with "parole supervision for life" and to make other substantive changes to the statute. L. 2003, c. 267, § 1 (eff. Jan. 14, 2004). Because appellants were convicted of enumerated offenses after January 14, 2004, they were sentenced to PSL. See N.J.A.C. 10A:71-6.12(a).

A-0042-16T2

may be prosecuted as a third-degree crime, N.J.S.A. 2C:43-6.4(d), or treated as a parole violation, N.J.S.A. 2C:43-6.4(b). Additionally, an offender who violates a PSL condition may be subjected to additional special conditions. See N.J.S.A. 30:4-123.60(a).

Appellants maintain that the restrictions imposed upon them cannot be sustained in light of the Supreme Court's decision in J.I. In J.I., a parolee subject to community supervision for life ("CSL") challenged a special condition that barred him from using a computer or Internet-capable device unless authorized by the District Parole Supervisor. Id. at 210-11. After J.I.'s release from confinement in October 2009, the parole authorities discovered that J.I. had accessed multiple websites depicting nude minors in January 2010. Id. at 212. The parole authorities also arrested J.I. for possessing and using a cell phone with Internet capability in October 2010. Ibid. Thereafter, the Board found that J.I. had violated conditions of CSL and returned him to confinement at the Adult Diagnostic and Treatment Center. Ibid.

When J.I. was released from confinement in October 2012, he was required to adhere to a general condition of supervision that prohibited him from accessing social-networking websites. Id. at 213. As of December 2013, J.I. had complied with this condition. Ibid. Nonetheless, in response to J.I.'s request

to modify the social-networking condition to allow J.I. to access LinkedIn, the District Parole Supervisor imposed a more stringent Internet restriction barring "J.I. from accessing the Internet for any purpose other than employment purposes, subject to his installing monitoring software on his computer." Ibid. The District Parole Supervisor justified this restriction based on J.I.'s previous violations of conditions of CSL in January and October 2010. Ibid.

J.I. violated this special condition by visiting seemingly benign, non-work-related websites. Id. at 214. In a March 2017 meeting, the District Parole Supervisor stated that J.I. was only permitted to use a computer or access the Internet with advance approval from the District Parole Supervisor and only for work-related purposes. Ibid. On administrative appeal, the Board denied J.I's request for an evidentiary hearing and affirmed this near-total Internet ban, based on J.I.'s "willful disregard of the prohibition against accessing non-work-related websites." Id. at 215.

The Supreme Court held that the Internet-use conditions imposed upon J.I. could not automatically be sustained. Id. at 230. Initially, the Court noted that "[t]o read our statutory scheme as allowing greater restrictions on the liberty of CSL offenders than are necessary would needlessly raise questions about its constitutionality." Id. at 227. In so holding, the Court cited various federal

court cases limiting Internet restrictions on parolees.  See id. at 226-29;  United States v. Albertson, 645 F.3d 191, 199 (3d Cir. 2011) (invalidating condition that required authorization for all Internet use in a child pornography case, because the offender did not use the Internet to contact any victims); United States v. Thielemann, 575 F.3d 265, 277-78 (3d Cir. 2009) (upholding a ten-year total Internet ban where the offender encouraged a friend in an online chatroom to sexually abuse a minor on a webcam); United States v. Crandon, 173 F.3d 122, 127-28 (3d Cir. 1999) (upholding a three-year total Internet ban where the offender used the Internet to solicit sex from a minor).  The Court "agree[d] with the position taken by federal courts that Internet conditions attached to the supervised release of sex offenders should not be more restrictive than necessary."  J.I., 228 N.J. at 211.

Accordingly, the Court instructed that "Internet conditions should be tailored to the individual CSL offender, taking into account such factors as the underlying offense and any prior criminal history, whether the Internet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety."  Id. at 224.  The Court held on administrative law grounds that the restriction "denying J.I. access to the Internet for any purpose unrelated to employment was unreasonable because it was not tied to

criminal conduct, rehabilitation, or public safety." Id. at 230. The Court underscored that J.I. had not used the Internet in committing the underlying offenses and that J.I. had been compliant with supervision for over one year prior to the imposition of the condition. Id. at 229-30. The Court also found that the Board had failed to explain why other less restrictive Internet-access restrictions available under the PSL statute were not acceptable alternatives to advance the public safety and the offender's rehabilitation. Ibid.

The Supreme Court further held that the imposition of conditions that restrict Internet use implicates a liberty interest and requires minimal due process. See id. at 231-34. The Court found that "the level of process required will depend on a number of variables, including the timing of and justification for the Internet restriction, the severity and length of the restriction, whether facts are contested or uncontested, and whether credibility determinations must be made." Id. at 233. The Court further noted that "[i]n the case of a Board panel's review of a District Parole Supervisor's imposition of stringent Internet restrictions, as here, due process will be satisfied by allowing the CSL offender 'the opportunity to respond by letter with supporting attachments, such as certifications or affidavits.'" Ibid. (quoting Jamgochian, 196 N.J. at 247). In the factual circumstances of J.I.'s case, however, the Court held that J.I. was entitled

10

to a hearing before the full Board.  Id. at 234.  In so holding, the Court emphasized "circumstances includ[ing] the fact that the parole authorities imposed more restrictive Internet conditions—amounting to a near-total ban—after J.I. had been compliant with his CSL conditions for thirteen months and that J.I.'s underlying conviction was unrelated to the Internet."  Ibid.

Thus, in J.I., the Court provided specific factors that the Board must consider in deciding whether Internet-access conditions imposed upon PSL offenders accord with administrative and constitutional protections.  In resolving the cases before us, therefore, we must apply the precepts established by the Court in J.I.

B.

(Statutes and Regulations on Internet-Access Conditions)

Before turning to the factual circumstances of each of the four appellants, we provide an overview of the statutory and regulatory framework governing the Board's ability to impose conditions of supervision that restrict Internet use. N.J.S.A. 2C:43-6.4(f) provides that the Board may impose the following restrictions on Internet access:

> (1) Prohibit the person from accessing or using a computer or any other device with Internet capability without the prior written approval of the court except

the person may use a computer or any other device with Internet capability in connection with that person's employment or search for employment with the prior approval of the person's parole officer;

(2) Require the person to submit to periodic unannounced examinations of the person's computer or any other device with Internet capability by a parole officer, law enforcement officer or assigned computer or information technology specialist, including the retrieval and copying of all data from the computer or device and any internal or external peripherals and removal of such information, equipment or device to conduct a more thorough inspection;

(3) Require the person to submit to the installation on the person's computer or device with Internet capability, at the person's expense, one or more hardware or software systems to monitor the Internet use;

(4) Require the person to submit to any other appropriate restrictions concerning the person's use or access of a computer or any other device with Internet capability; and

(5) Require the person to disclose all passwords used by the person to access any data, information, image, program, signal or file on the person's computer or any other device with Internet capability.

[N.J.S.A. 2C:43-6.4(f)(1) to (5).]

See also N.J.S.A. 30:4-123.59(b)(2) (listing identical provisions). Additionally, a general condition requires PSL offenders to "[r]efrain from using any computer and/or device to create any social networking profile or to access any

12

A-0042-16T2

social networking service or chat room in the offender's name or any other name for any reason unless expressly authorized by the District Parole Supervisor." N.J.A.C. 10A:71-6.12(d)(25).[2]

While these appeals were pending, the Board proposed and adopted new regulations regarding the imposition of special conditions restricting Internet access in response to the Court's decision in J.I. N.J.A.C. 10A:72-14.1 to 14.4; 49 N.J.R. 3408(a) (Oct. 16, 2017) (proposed); 50 N.J.R. 1154(a) (Apr. 16, 2018) (adopted). The Board sought to "codif[y] the procedures for the imposition of a special condition prohibiting a community or parole supervision for life offender from accessing the Internet, including the criteria, procedure, and review process." 49 N.J.R. 3408(a). The Board adopted the regulations with minor amendments on April 16, 2018. 50 N.J.R. 1154(a).[3]

The regulations adopted after J.I. establish new criteria and procedures for the imposition of a special condition restricting Internet access. The adopted

---

[2] The regulation provides definitions for the terms "Chat room," "Internet website or application," "Peer-to-peer network," and "Social networking service." N.J.A.C. 10A:71-6.12(d)(25)(i) to (iv).

[3] The Board received one comment in response to the proposed regulations. 50 N.J.R. 1154(a). In response to the comment, the Board made minor amendments to the regulations regarding password disclosure and the mandatory annual review of Internet-access conditions. Ibid., see also N.J.A.C. 10A:72-14.1(c)(1)(vi) (password disclosure); N.J.A.C. 10A:72-14.4(a) (annual review).

A-0042-16T2

regulations "appl[y] to the imposition of a special condition prohibiting an offender access to the Internet[.]"  N.J.A.C. 10A:72-14.1(a).  Under the regulations, a District Parole Supervisor may impose an Internet-access condition if:

> 1. There is a specific and articulable reason and a clear purpose for the imposition of the Internet access condition; and
>
> 2. The imposition of the Internet access condition will act as an aid to the offender's re-entry effort, will promote the rehabilitation of the offender, is deemed necessary to protect the public, or will reduce recidivism by the offender.
>
> [N.J.A.C. 10A:72-14.1(b)(1) to (2).]

Next, the regulations codify the restrictions that may be imposed on a PSL offender's Internet access:

> (c) The Internet access condition shall include, but not be limited to, the following:
>
> 1. The offender is to refrain from the possession and/or utilization of any computer and/or device that permits access to the Internet unless specifically authorized by the District Parole Supervisor or designee. If the District Parole Supervisor or designee permits use of a computer and/or device that is capable of accessing the Internet, the offender shall be subject to the following restrictions and conditions:

i.  The offender is to refrain from accessing the Internet from any computer and/or device at any time or for any reason unless authorized by the District Parole Supervisor or designee;

ii.  The offender is prohibited from possessing or using any data encryption techniques and/or software programs that conceal, mask, alter, eliminate, and/or destroy information, and/or data from a computer and/or device;

iii.  The offender agrees to install on the computer and/or device, at his or her expense, one or more hardware or software system(s) to monitor computer and/or device use if such hardware or software system(s) is(are) determined to be necessary by the District Parole Supervisor or designee;

iv.  The offender agrees to permit the monitoring of the computer and/or device activity by a parole officer and/or computer/device specialist through the use of electronic means;

v.  The offender is subject to periodic unannounced examinations of the computer and/or device by a parole officer or designated computer/device specialist, including the retrieval and copying of all data from the computer and/or device and any internal or external peripherals and removal of such equipment to conduct a more thorough inspection; and

15 A-0042-16T2

vi. The offender is to disclose all usernames and passwords used by him or her to access any computer/device, e-mail address, and approved social networking service or chat room, as well as any other username(s) and password(s) used by him or her to access any data, information, image, program, signal, or file on the computer/device deemed necessary by a parole officer to ensure compliance with the conditions of supervision.

[N.J.A.C. 10A:72-14.1(c)(1)(i) to (iv).]

In addition, the regulations detail the procedure for imposing a special condition restricting Internet access. N.J.A.C. 10A:72-14.2. A District Parole Supervisor must provide "written notice of the imposition of an Internet access condition[,] . . . includ[ing] the basis for imposition of the condition." N.J.A.C. 10A:72-14.2(a). The offender must also be "provided with a written informational statement that details the procedure for the imposition of the Internet access condition." N.J.A.C. 10A:72-14.2(b). "The offender shall indicate in writing whether he or she contests the allegations, the conclusions to be drawn from the allegations, or the justification supporting the imposition of the Internet access condition." N.J.A.C. 10A:72-14.2(c).[4]

---

[4] The regulation is silent as to when the offender must indicate in writing whether he or she contests the imposition of the conditions. We suggest the regulation be revised to clarify the deadline.

16

A contesting offender has "[ten] business days to submit a written statement or documentation to the District Parole Office to be considered before the Internet access condition becomes effective." N.J.A.C. 10A:72-14.2(e)(1). If the offender submits a written statement or documentation within ten business days, the condition does not become effective until it is reviewed by a Board panel. N.J.A.C. 10A:72-14.2(e)(3). The Board panel shall review the basis for the imposition of the condition and the written statement of the offender and notify the offender and the District Parole Supervisor in writing whether it affirms or vacates the imposition of the condition. N.J.A.C. 10A:72-14.3(a) to (c).

Finally, the regulations provide that a District Parole Supervisor will annually review the Internet-access condition. N.J.A.C. 10A:72-14.4(a). On review, the following criteria will be considered:

> 1. There is a reasonable basis to preclude access to the Internet;
>
> 2. Internet use is consistent with the continued rehabilitation of the offender and will not compromise public safety;
>
> 3. The offender is in compliance with the conditions of supervision;

4. The offender has met the goals listed in his or her Case Plan Agreement and is progressing in a pro-social manner; and

5. The offender's treatment provider, if the offender is presently participating in counseling, is of the opinion that Internet access will promote the rehabilitation of the offender and assist the offender's re-entry efforts.

[N.J.A.C. 10A:72-14.4(c)(1) to (5).]

If the offender contests the justification for continuation of the condition, the condition remains in effect pending review by a Board panel. N.J.A.C. 10A:72-14.4(e).

We note that by adopting these new regulations, the Board has filled some regulatory gaps and has provided greater protections to PSL offenders than were available when these appeals were filed. We also reiterate that the statutory and regulatory scheme governing PSL is tempered by administrative and constitutional protections afforded to parolees. With these principles in mind, we now turn to the cases at hand.

II.

(Factual and Procedural Background)

K.G.

On February 15, 2013, K.G. pled guilty of one count of endangering the welfare of a child, N.J.S.A. 2C: 24-4(a). K.G. had sex with a fifteen-year-old

neighbor who became pregnant. He did not, however, use the Internet in the commission of the offense. K.G. was sentenced to PSL, which commenced immediately upon his conviction because K.G. was not sentenced to a term of incarceration. K.G. was subjected to general conditions under PSL, including a condition that he would refrain from using social-networking websites ("social-networking general condition") and that he was prohibited from leaving the state without permission.

On August 20, 2015, parole authorities discovered that K.G. had been using Facebook, Instagram, and Snapchat. The parole authorities seized and searched K.G.'s cell phone, revealing that K.G. had used the online dating applications Tinder and Badoo and that K.G. had nude photographs of himself and other women, some involving sexual acts, on his cell phone. Additionally, K.G. admitted to traveling out of state without permission on two occasions. K.G. was arrested for these violations and was detained in jail pending a hearing.

The Board conducted a parole revocation hearing on September 17, 2015, and concluded that K.G.'s PSL would continue with K.G. being subject to the Electronic Monitoring Program. K.G. was released on October 12, 2015. On November 9, 2015, the local parole office imposed a special condition of PSL prohibiting K.G. from accessing "any computer and/or device that permits

access to the Internet unless authorized by the District Parole Supervisor" ("no-Internet special condition"). If authorized to use such a device by the District Parole Supervisor, K.G. was required to (1) refrain from using any techniques or programs that concealed or destroyed information on his computers or devices, (2) install, at his own expense, software that allows for the monitoring of his computers or devices, if determined necessary by the District Parole Supervisor, (3) permit the Board to monitor his computers or devices through electronic means, (4) allow for periodic unannounced examinations of his computers or devices, and (5) disclose all passwords used to access any data, information, image, or program on file on his computers or devices ("monitoring special conditions").

In December 2015, K.G. wrote to the District Parole Supervisor, seeking rescission of the no-Internet and monitoring special conditions. Alternatively, K.G. requested permission to use the Internet and electronic devices for ten specific purposes. In January 2016, the Division of Parole affirmed the imposition of the special conditions, but authorized K.G. to use the Internet for nine of the ten requested purposes, except that K.G. was prohibited from using social-networking websites even for business purposes. The Board required K.G. to install monitoring software on his devices and to disclose all passwords.

K.G. administratively appealed the conditions to a Board panel, which affirmed the conditions. K.G. appealed the panel's decision to the full Board, which affirmed the conditions in a final agency decision on July 27, 2016. In its written decision, the Board found that the imposition of the special conditions was warranted based on K.G.'s failure to adhere to the social-networking general condition. It noted that "this behavior can be considered high risk and could be considered a trigger for possible re-offense given the ages of the users are not always known." Additionally, considering K.G.'s description of his offense in an October 14, 2015 psychological evaluation, the Board found that "the opportunistic and exploitive elements of [K.G.]'s crime underscore the concerns [the Board] has for permitting social networking access."

K.G. appealed the final agency decision.[5]

## C.C.

On January 29, 2007, C.C. pled guilty to attempted sexual assault, N.J.S.A. 2C:14-2(c)(4), and luring/enticing a child victim by various means,

---

[5] While this appeal was pending, the Board granted K.G.'s requests to use a Fitbit, a business iPad, and a Nintendo Wii, but denied his requests to use a Smart TV and to access social media for business purposes. K.G. is required to install monitoring software on all Internet-capable devices. In September 2018, the Board granted K.G. permission to use a third party to advertise his business on social-networking websites, but K.G. is not permitted to access the social-networking websites that contain those ads.

N.J.S.A. 2C:13-6. C.C.'s offense involved using an AOL public chat room to contact an undercover detective posing as a fourteen-year-old girl, sending sexually explicit photos of himself, and arranging to meet in person to have sex. C.C. was sentenced to four years' incarceration and was granted parole on February 5, 2008, subject to PSL. Upon his release, C.C. was subjected to the social-networking general condition and the no-Internet and monitoring special conditions.

On December 15, 2015, C.C. was arrested for violating the conditions of his PSL, including having unsupervised contact with two minors, maintaining a Facebook account and a personal advertisement on Craigslist, using an iPhone to access the Internet without permission, and lying to his parole officer about his employment. On December 15, 2016, C.C. was released under PSL, subject to the social-networking general condition and the no-Internet and monitoring special conditions.

On February 27, 2017, C.C. filed an administrative appeal seeking to vacate the general and special conditions restricting his Internet access. On March 22, 2017, a Board panel affirmed the imposition of these conditions. On May 31, 2017, the full Board issued a final agency decision affirming the imposition of the conditions. In its written decision, the Board found that the

conditions were justified based on the nature of C.C.'s underlying offense and his previous violations of conditions of PSL. C.C. appealed the final agency decision.[6]

J.L.

In 2009, J.L. pled guilty to endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and was sentenced to two years' probation.[7] The underlying incident involved J.L. providing beer to minors during a camping trip and having sex with a fourteen-year-old girl. On February 28, 2013, J.L. pled guilty to one count of endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and was sentenced to three years' incarceration and PSL. In the underlying incident, J.L. friend-requested a fifteen-year-old girl on Facebook and exchanged instant messages and nude photographs with the girl. J.L. arranged to meet the girl at

---

[6] While this appeal was pending, C.C. again requested that the no-Internet and monitoring special conditions be rescinded. In response to this request, in September 2018, the Board revised the special condition to allow C.C. to use devices to access the Internet, provided that he notify his parole officer of all Internet-capable devices and comply with the monitoring special conditions on all devices ("notify-computer special condition").

[7] It does not appear that J.L. was sentenced to PSL as a result of this conviction.

A-0042-16T2

a movie theater. After meeting at the movie theater, J.L. used his phone to show the girl pornography and had sex with her.[8]

On July l6, 2014, J.L. was granted parole under PSL and was subjected to special conditions. One special condition prohibited J.L. from purchasing, possessing, or consuming alcohol and "from frequenting establishments whose primary purpose is the sale of alcohol (i.e. bars and liquor stores)." ("no-alcohol special condition"). J.L. was also subject to the no-Internet special condition and a condition prohibiting him from "purchasing, viewing, downloading, possessing and/or creating a picture, photograph, negative, film, movie, videotape, Blu-ray, DVD, CD, CD-ROM, streaming video, video game, computer generated or virtual image or other representation, publication, sound recording or live performance that is predominately orientated to descriptions or depictions of sexual activity."[9]

---

[8]  The Adult Presentence Report for this conviction states that J.L.'s attorney provided a memorandum recounting the details of the offense and indicating that J.L. showed the victim pornography using his cell phone.

[9]  The condition further specified that materials "shall not be considered predominately orientated to descriptions or depictions of sexual activity unless the medium features or contains such descriptions or depictions on a routine basis or promotes itself based upon such descriptions or depictions."

On June 1, 2015, J.L. was arrested for violating conditions of his PSL regarding out-of-state travel and consuming alcohol. The Board revoked J.L.'s parole, and J.L. was released from incarceration on May 31, 2016 after serving a one-year term. Upon his release, the Board re-imposed the no-alcohol special condition, but did not re-impose the no-Internet or pornography special conditions.

On September 12, 2016, J.L. submitted an administrative appeal seeking removal of the no-alcohol condition, as well as the no-Internet and pornography special conditions, both of which had not actually been re-imposed. In response to this appeal, the District Parole Supervisor affirmed the no-alcohol special condition and found that the no-Internet and no-pornography conditions had never been re-imposed. The District Parole Supervisor instead imposed the notify-computer special condition, which required J.L. to notify his parole officer before purchasing, possessing or utilizing any computer or device that permits access to the Internet and to adhere to the monitoring special conditions on all devices.[10] The District Parole Supervisor additionally imposed a special

---

[10] Counsel informed us at oral argument that J.L. is not currently required to install monitoring software on his Internet-capable deceives.

condition prohibiting J.L. "from accessing any sexually-oriented websites, material, information or data."[11]

In February 2017, J.L. requested the rescission of the social-networking general condition, the notify-computer special condition, the monitoring special condition, the special condition restricting access to sexually-oriented materials, and the no-alcohol special condition. Both a private psychologist and a treatment center had evaluated J.L. and determined that he did not need substance abuse treatment. A District Parole Supervisor denied J.L.'s requests to rescind these conditions.

In March 2017, a Board panel affirmed the conditions. J.L. appealed to the full Board, which affirmed the conditions in a final agency decision on May 31, 2017. In its written decision, the Board found that the social-networking

---

[11] Unlike the previous restriction on pornography, this new special condition did not contain the "predominantly oriented" language in defining sexual-oriented materials. It instead contained the following definition:

> For the purposes of this special condition, sexually oriented material means any videotape, Blu-ray, DVD, CD, CD-ROM, streaming video, video game, computer generated or virtual image or other representation, publication, sound recording or live performance, that contains a description or depiction of actual or simulated acts such as, but not limited to, sexual intercourse, oral sex, anal sex, masturbation, bestiality, sadism and/or masochism.

general condition and the notify-computer special condition were justified based on J.L.'s use of social-networking websites and the Internet in his underlying offense. The Board also found that "sexually-oriented materials" was clearly defined in the language of the special condition and that this special condition was justified based on the fact that J.L. showed his victim pornography during the underlying offense. Finally, the Board found that the no-alcohol condition did not inhibit J.L.'s business and that J.L. had not demonstrated a long enough period of sobriety to warrant the discharge of this condition.

J.L. appealed the final agency decision.

D.C.

On June 25, 2008, D.C. pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4), for engaging in sexual acts with a fourteen-year-old girl with the assistance of her aunt. D.C. did not use the Internet in the commission of this offense. D.C. was sentenced to three years' incarceration and was released under PSL on August 31, 2009. Upon his release, D.C. was subject to the social-networking general condition.

In December 2009, parole authorities found D.C. in possession of a computer and video gaming console. D.C. admitted that he had been using AOL Instant Messenger to communicate with friends, had been using X-Chat (a

27

social-networking website) to get technical assistance on his computer's operating system, and had a YouTube Account. Upon reviewing D.C.'s devices, the parole authorities did not discover any sexually deviant online activity. On January 28, 2010, in lieu of charging D.C. with a parole violation, the Board imposed the no-Internet special condition.

Since 2010, the Board granted D.C. exceptions to the no-Internet special condition to allow D.C. to use the Internet in relation to his profession as an IT professional, including allowing D.C. to apply for employment online, create an online portfolio, use LinkedIn, and purchase a personal laptop computer to use for job training on web programming. The Board required D.C. to install monitoring software on his personal laptop.

In December 2016, D.C. appealed the no-Internet and social-networking conditions to the Board, arguing that as he was employed in the IT field, he may need to access other people's computers while making repairs and may need to use blogs, video websites, and social-networking applications to stay up to date with technology and to network himself. In February 2017, a Board panel determined that the social-networking restriction would be held in abeyance and that D.C. would be permitted to access any social-networking service, provided that D.C. disclosed all user names and passwords for every profile. The panel

also relaxed the no-Internet condition, instead imposing the notify-computer special condition. Additionally, if D.C. chose to use a computer or Internet-capable device, he was subject to the monitoring special conditions.

D.C. administratively appealed the panel's decision to the full Board, which affirmed the panel's decision in a final agency decision on May 31, 2017. In its written decision, the Board found that the monitoring special conditions were "necessary and appropriate to provide for the safety of the public, and minors in particular" and that "these provisions are the least restrictive means by which the Division of Parole can monitor [D.C.] for inappropriate Internet and social networking use." Further, the Board found that the monitoring special conditions required that D.C. install monitoring software on a device only when the District Parole Supervisor deemed it necessary, and that the Division of Parole had already determined that it was unnecessary to monitor D.C.'s work devices. The Board concluded "while D.C. has demonstrated a substantial compliance with supervision in general, the time elapsed during which [D.C.] has been responsibly using the Internet and social networking is insufficient to allow for the discharge of the monitoring and password requirements at this time."

D.C. appealed the final agency decision.

## III.

### (Legal Discussion)

"Our review of the Parole Board's determination[s] is deferential in light of its expertise in the specialized area of parole supervision[.]" J.I., 228 N.J. at 230. We will reverse a decision of the Board only if the offender shows that the decision was arbitrary or unreasonable, lacked credible support in the record, or violated legislative policies. Trantino v. N.J. State Parole Bd., 154 N.J. 19, 24-25 (1998); McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). However, "the parole authorities do not have unbridled discretion to impose unnecessary or oppressive Internet conditions that do not advance a rational penological policy." J.I., 228 N.J. at 230. Moreover, the Board's actions may not violate constitutional protections. See J.B. v. N.J. State Parole Bd., 229 N.J. 21, 35 (2017) (considering whether the polygraph testing of PSL offenders violated constitutional privilege against self-incrimination, constitutional right to counsel, or constitutional right to privacy); H.R. v. N.J. State Parole Bd., ___ N.J. Super ___, ___ (App. Div. 2018) (slip op. at 2-3) (considering whether the continuous satellite-based monitoring of sex offenders violated protection against unreasonable searches in New Jersey Constitution).

Guided by this standard of review, we first address the argument advanced by all appellants that the monitoring special conditions violate the constitutional protections against unreasonable searches.

A.

(Constitutional Challenges to Monitoring Conditions)

Appellants contend that the monitoring special conditions, including the use of monitoring software and mandatory password disclosure, violate the protections from unreasonable searches contained in the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. Appellants also argue that these conditions violate the rights to substantive due process and privacy under the Fourteenth Amendment of the United States Constitution and Article I, Paragraph I of the New Jersey Constitution. We reject these arguments.

Constitutional claims made by PSL offenders "must be examined in the context of their distinctive status as sex offenders who have been released into the community after serving their custodial sentences, and who are now under the Parole Board's continued supervision through CSL or PSL." J.B. v. N. J. State Parole Bd., 433 N.J. Super. 327, 336 (App. Div. 2013). In Samson v. California, the United States Supreme Court upheld a California statute that

31

allowed for suspicionless searches of parolees. 547 U.S. 843, 857 (2006). Weighing parolees' diminished expectations of privacy by virtue of their status as parolees against the State's interest in supervising parolees and reducing recidivism, the Court concluded that suspicionless searches of parolees did not offend the Fourth Amendment. Id. at 850-57.

The New Jersey Constitution, however, requires that suspicionless searches be evaluated under a "special needs" test rather than a general balancing test. State v. O'Hagen, 189 N.J. 140, 157-58 (2007). The New Jersey Supreme Court delineated the special needs test as follows:

> Under that test we must first consider whether there is a special governmental need beyond the normal need for law enforcement that justifies [the search] without individualized suspicion. If there is a special need, we must next examine the privacy interests advanced by defendant and any limitations imposed. Finally, we must weigh the competing governmental need against the privacy interests involved to determine whether [the search] ranks among the limited circumstances in which suspicionless searches are warranted.
>
> [Id. at 158 (internal quotations omitted).]

Applying this test, we conclude that the State has a special governmental need justifying the suspicionless searches of PSL offenders' Internet-capable

A-0042-16T2

devices.[12] The State lacks a special governmental need where "the immediate purpose [of the suspicionless search] is to gather evidence against the individual for general crime control purposes." Id. at 160. The State may have a special government interest, however, where "the core objective of the police conduct serves a special need other than immediate crime detection." Ibid.

In the cases before us, we are mindful that the Legislature enacted the CSL statute to address the concern that sex offenders recidivate at a relatively high rate. See Jamgochian, 196 N.J. at 237-38; Doe v. Poritz, 142 N.J. 1, 14-18 (1995). To advance this purpose, PSL offenders are "subject to conditions appropriate to protect the public and foster rehabilitation." N.J.S.A. 2C:43-6.4(b); see also J.I., 228 N.J. at 211 ("Conditions imposed on CSL offenders— like those imposed on regular parolees—are intended to promote public safety, reduce recidivism, and foster the offender's reintegration into society."). In this regard, we find that the monitoring conditions serve two significant purposes beyond immediate crime detection.

---

[12] As a threshold matter, the monitoring software, unannounced inspection of devices, and password disclosure conditions constitute searches, because the Board obtains information by intruding on an area (computer files) in which individuals have a reasonable expectation of privacy. See Grady v. North Carolina, 135 S. Ct. 1368, 1369-71 (2015) (holding that GPS monitoring of registered sex offenders constituted a search).

A-0042-16T2

First, the monitoring conditions allow the Board to ensure that PSL offenders adhere to any restrictions placed on their Internet use. See J.B., 229 N.J. at 41 ("We have acknowledged that the State has a significant interest in ensuring adherence to the restrictive conditions imposed pursuant to PSL and CSL to protect the public from recidivism by defendants convicted of serious sexual offenses." (internal quotation omitted)). Second, the monitoring conditions may deter PSL offenders from using the Internet to commit new offenses, particularly in cases where the offender has previously used the Internet to commit offenses. See H.R., ___ N.J. Super ___ (slip op. at 8) ("An offender is likely to be deterred from engaging in criminal activity that could be verified with monitoring data."). These two interests are special governmental needs beyond "gather[ing] evidence against the individual for general crime control purposes." O'Hagen, 189 N.J. at 160.

Having determined that the monitoring special conditions serve a special need, we next examine PSL offenders' offsetting privacy interests. As stated earlier, PSL offenders' privacy interests are significantly diminished by virtue of their status as parolees. See Samson, 547 U.S. at 850-52; J.B., 229 N.J. at 40-41. Weighing the State's special interests against PSL offenders' diminished privacy interests, we find that the State's interests outweigh the offenders'

A-0042-16T2

privacy interests. See J.B., 229 N.J. at 41 ("In weighing the competing interests here, we find that the State's interest in ensuring that parolees adhere to the conditions of their release pursuant to PSL and CSL outweighs the parolees' privacy interest in the information obtained during a polygraph examination."); H.R., ___ N.J. Super. ___ (slip op. at 13-16) (holding that the satellite-based monitoring of registered sex offenders was an unreasonable search for an offender not subject to PSL, but was reasonable for an offender subject to PSL). Therefore, we find that the monitoring special conditions do not facially violate the protections of the Fourth Amendment of the United States Constitution or Article I, Paragraph 7 of the New Jersey Constitution.

Similarly, based on the balancing of the relevant interests, we reject appellants' contention that these conditions infringe upon appellants' rights to substantive due process and privacy. See J.B., 229 N.J. at 40-43 (holding that polygraph examinations of PSL and CSL offenders did not violate constitutional right to privacy). We note, however, that the Board may not impose monitoring conditions on individual PSL offenders in an arbitrary or unreasonable manner. J.I., 22 N.J. at 230. In that regard, as with other Internet-use restrictions, the Board should tailor monitoring conditions to the needs of the individual offender. See id. at 224. Accordingly, we consider whether the monitoring

conditions imposed are arbitrary or unreasonable as applied to each individual appellant below.

B.

(As-Applied Challenges)

<u>K.G.</u>

K.G. argues that the no-Internet special condition, the monitoring special conditions, and the social-networking general condition, as applied to him, violate the constitutional protections of free speech and association and constitutional protections against unreasonable searches. He also contends that the conditions were imposed upon him without sufficient due process, as the Board did not provide discovery or a hearing during the administrative appeal. K.G. finally argues that the no-Internet special condition violates due process under the void for vagueness doctrine.

<u>Internet-Access Conditions</u>

Considering the factors discussed in <u>J.I.</u>, we find that the no-Internet special condition, the monitoring special conditions, and the social-networking general condition are arbitrary, capricious, and unreasonable as applied individually to K.G. Guided by the Court's decision in <u>J.I.</u>, we consider "such factors as the underlying offense and any prior criminal history, whether the

Internet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety." J.I., 228 N.J. at 224. As in J.I., K.G.'s underlying offense did not involve the use of the Internet and K.G's criminal history does not reveal any misuse of the Internet. See id. at 229. Indeed, whereas J.I. visited websites depicting nude minors while on parole, there is no evidence in the record suggesting that K.G. ever visited illegal or inappropriate websites. See id. at 212. Based on K.G.'s underlying offense and criminal history, therefore, the need to restrict his Internet use to protect public safety is diminished. On the other hand, K.G. may have legitimate needs to use the Internet to reintegrate into society, such as by marketing his business. See id. at 210 ("Today, the Internet plays an essential role in the daily lives of most people—in how they communicate, access news, purchase goods, seek employment, perform their jobs, enjoy entertainment, and function in countless other ways.").

The Board primarily justified the imposition of these conditions based on K.G.'s violation of the social-networking general condition in August 2015. We find, however, that the Board never justified how a total ban on the use of social networking by K.G. was "reasonably tailored to advance the goals of rehabilitation or public safety." Id. at 229. The Board reasoned that "the

opportunistic and exploitive elements of [K.G.]'s crime underscore the concerns it has for permitting social networking access. By his own account, [K.G.] admits to engaging in a conversation that led to a sexual encounter without an awareness of the victim's age." This rationale, however, is insufficient to support a total ban on social networking in a case such as K.G. where the offender has not used social networking or the Internet to contact minors or otherwise facilitate a sexual offense. Compare Albertson, 645 F.3d at 199 (invalidating condition that required authorization for all Internet use in child pornography case, because the offender did not use the Internet to contact any victims), with United States v. Love, 593 F.3d 1, 12 (D.C. Cir. 2010) (upholding Internet ban where the offender downloaded child pornography and used the Internet to solicit sex with a minor).

We do not condone K.G.'s violations of conditions of PSL and note that an offender must abide by conditions of PSL until relief is granted. J.I., 228 N.J. at 229. Nonetheless, we cannot ignore that the social-networking restriction was overbroad when it was initially imposed upon K.G., and that the subsequent

imposition of the no-Internet and monitoring special conditions was not reasonably tailored to public safety or rehabilitative needs. See ibid.[13]

We acknowledge that the Board has granted K.G. numerous exceptions to the no-Internet special condition that advance rehabilitative needs. Nevertheless, these exceptions do not cure conditions that are overbroad to begin with. See United States v. Holena, 906 F.3d 288, 292-93 (3d Cir. 2018) (holding that condition of supervised release that barred an offender, who used Internet to solicit sex from a minor, from accessing the Internet without prior approval of probation officer was overbroad in scope).

In sum, because K.G. did not use the Internet to commit an offense and because the Board has advanced no significant public safety concern to justify these conditions, we cannot conclude that the conditions are reasonably tailored to the individual offender. See J.I., 228 N.J. at 230. We therefore hold that the

---

[13] We note that the United States Supreme Court held that a state law that prohibited registered sex offenders from accessing social-networking websites that could be accessed by minors was unconstitutionally overbroad and violated the First Amendment. See Packingham v. North Carolina, 137 S. Ct. 1730, 1736-37 (2017). Although Packingham is not on point because that case dealt with a criminal statute affecting registered sex offenders who were not on parole, the Court recognized significant First Amendment interests in access to social-networking websites. See ibid.

no-Internet special condition, the monitoring special conditions, and social-networking general condition are arbitrary, capricious, and unreasonable as applied to K.G. and hereby reverse the Board's imposition of these conditions.[14]

C.C.

C.C. argues that the social-networking general condition, the no-Internet special condition, and the monitoring special conditions are arbitrary, capricious, and unreasonable as applied to him. He also contends that the Board violated procedural due process by declining to provide him with a hearing and discovery during the administrative appeal. We reject these arguments.

Internet-Access Conditions

As noted above, while this appeal was pending, the Board relaxed the no-Internet special condition and instead imposed upon C.C. the notify-computer special condition. Based on consideration of the factors in J.I., we find that the social-networking general condition, the notify-computer special condition, and the monitoring special conditions are reasonable as applied to C.C.

In its final agency decision, the Board cited, among other things, the following facts as justifications for the imposition of the Internet-use

---

[14] Having reversed the conditions at issue, it is not necessary to address K.G.'s remaining arguments.

40

restrictions: (1) C.C.'s underlying offense involved the use of the Internet and social-networking websites to solicit the minor; (2) C.C. consciously violated his previous Internet-use conditions; (3) C.C. had not yet demonstrated a substantial period of compliance with conditions of PSL since his release from custody in December 2016; and (4) C.C. was working at a convenience store and had not demonstrated the need to use the Internet or social-networking websites for a professional purpose.

Considering the nature of C.C.'s underlying offense and his history of violating PSL conditions restricting Internet access, we find that the conditions imposed upon C.C. are reasonably tailored to advance goals of public safety and rehabilitation and are not arbitrary, capricious, and unreasonable as applied to C.C. See, e.g., Crandon, 173 F.3d at 127-28 (upholding condition of supervised release restricting Internet use where the offender used the Internet to solicit sex from a minor).

Procedural Due Process

We also reject C.C.'s contention that he was entitled to a hearing before the Board. In assessing whether C.C. was entitled to a hearing, we consider "the timing of and justification for the Internet restriction, the severity and length of the restriction, whether facts are contested or uncontested, and whether

credibility determinations must be made." J.I., 228 N.J. at 233. These factors distinguish C.C.'s case from the circumstances in J.I. that warranted a hearing. The Board initially imposed the Internet restrictions upon C.C.'s release from incarceration in 2008 for an offense in which he used the Internet to lure a minor. Additionally, in 2016, the Board re-imposed the conditions upon C.C.'s release from incarceration for violating the conditions of his PSL that restricted Internet access. This timing is distinguishable from J.I., where "J.I. complied for thirteen months with the Internet conditions set on his release date, and the Parole District Supervisor justified imposing extreme restrictions based on conduct that predated his release." Id. at 232. Moreover, C.C. did not allege any factual disputes in his administrative appeal to the Board. For these reasons, we conclude that C.C. was not entitled to a hearing to contest the imposition of the conditions.

We finally reject C.C.'s argument that he was entitled to discovery, as neither the Court in J.I. nor the Board's regulations establish a right to discovery in the agency appeals process.

C.C. also claims that he was deprived procedural due process because he received an entirely redacted copy of the Board panel's decision sheet in March 2017 and therefore could not adequately challenge the specific factual or legal

basis for the panel's decision in his appeal to the Full Board. On the facts of this case, we find that C.C. had sufficient notice of the justification for the imposition of the special conditions, as the conditions were imposed upon his release from incarceration for previous violations of conditions of PSL restricting the use of the Internet and social networking. We note, however, that the Board should ordinarily provide the offender with an unredacted decision sheet, unless it has a substantial security or safety need that requires redaction.[15]

## J.L.

J.L. argues that the social-networking general condition and the notify-computer special condition, as applied to him, violate constitutional protections. Additionally, J.L. contends that the special condition restricting his access to sexually-oriented materials and the no-alcohol special condition are arbitrary, capricious, and unreasonable. J.L. also contends that all of the aforementioned conditions violate due process under the void for vagueness doctrine. Finally, J.L. argues that the conditions were imposed upon him without sufficient procedural due process because he did not receive a hearing or discovery during the administrative appeal. We address each of these arguments in turn.

---

[15] We also note that the adopted regulations require that the offender be notified in writing of the Board panel's decision. N.J.A.C. 10A:72-14.3(c).

Internet-Access Conditions

We first address the social-networking general condition and the notify-computer special condition. We again turn to the factors described in J.I. Like C.C., J.L. used the Internet and social-networking websites to commit the underlying offense. Thus, the Board's need to restrict J.L.'s Internet use is more significant than in J.I. See 228 N.J. at 229. Additionally, unlike the no-Internet condition in J.I., J.L. faces the less restrictive notify-computer special condition and is not currently required to install monitoring software on his devices.

Under the notify-computer special condition, the Board may authorize J.L. to access the Internet for purposes conducive to rehabilitative needs. In this regard, the notify-computer special condition is a "less restrictive alternative[] . . . [to] achieve the goal of public safety and rehabilitation." Id. at 224. Considering the Board's interest in ensuring that J.L. does not use the Internet or social-networking websites to commit new crimes, we find that the social-networking general condition and the notify-computer special condition are reasonably tailored to advance public safety and rehabilitative needs and conclude that these conditions are not arbitrary, capricious, or unreasonable as applied to J.L.

44

Pornography Condition

We next turn to the condition restricting J.L.'s access to sexually-oriented materials. Initially, we note that like restrictions on Internet use, this restriction implicates First Amendment rights. See United States v. Gnirke, 775 F.3d 1155, 1163 (9th Cir. 2015). Nonetheless, given the role of pornography in J.L.'s 2013 offense, we find that a restriction on him accessing pornography is reasonably related to the goal of protecting the public. See, e.g., United States v. Rock, 863 F.3d 827, 832 (D.C. Cir. 2017) (upholding total ban on pornographic materials in child pornography case because condition was related to the underlying offense); Thielemann, 575 F.3d at 277-78 (upholding ban on "sexually explicit" materials where the offender encouraged a friend in an online chatroom to sexually abuse a minor on a webcam).

We note, however, that the pornography restriction J.L. currently faces is significantly broader than the restriction initially imposed in July 2014. As detailed above, the July 2014 condition barred access to materials that were "predominantly orientated to descriptions or depictions of sexual activity," whereas the current condition bars access to all "sexually-oriented materials." For example, based on the special condition's definition of "sexually-oriented materials," a film containing a single depiction of simulated sexual intercourse

would be prohibited. See Gnirke, 775 F.3d at 1165 ("Applied literally, the language of the condition would prevent [the offender] from viewing Oscar-winning films like American Beauty and Brokeback Mountain, television shows like The Wire, or sexually explicit works of art that appear in museums; yet such non-pornographic materials receive full protection under the First Amendment." (citing Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874 (1997))); United States v. Simons, 614 F.3d 475, 483-85 (8th Cir. 2010) (holding that condition prohibiting an offender from possessing any material that depicts nudity involved a "greater deprivation of liberty than [was] reasonably necessary.").

On the record before us, we unable to conclude that the less restrictive condition limiting J.L.'s access to materials that are "predominantly orientated to descriptions or depictions of sexual activity" was insufficient to protect the public. Therefore, we remand to the Board to consider whether a less restrictive pornography condition than the one currently imposed upon J.L. can adequately protect the public safety or to provide a more specific justification for the current condition.[16] We do not necessarily require that the Board hold a hearing on remand, but the Board should consider the factors described in J.I. to determine if a hearing is warranted. See J.I., 228 N.J. at 233.

---

[16] The current condition will remain in effect pending this remand.

A-0042-16T2

Alcohol Condition

We next address whether the no-alcohol special condition is arbitrary, capricious, and unreasonable as applied to J.L. The record indicates that two clinical evaluations have deemed that J.L. did not need substance abuse treatment. Further, although J.L's 2009 offense involved the use of alcohol, there is no indication in the record that J.L. has subsequently engaged in offenses involving alcohol or has violated the no-alcohol special condition since June 2015. Moreover, the special condition is broad, prohibiting not only consuming alcohol, but also purchasing alcohol for others and frequenting establishments whose primary purpose is the sale of alcohol.

In affirming the no-alcohol special condition, the Board found that the condition did not inhibit J.L.'s business activities and that J.L. had not demonstrated a long enough period of sobriety to warrant the discharge of this condition. In light of the clinical evaluations finding that J.L. did not need substance abuse treatment, however, we conclude that these justifications are insufficient to reasonably support such a comprehensive restriction on consuming alcohol, purchasing alcohol, and attending establishments whose primary purpose is the sale of alcohol. We therefore find that the no-alcohol

special condition is arbitrary, capricious, and unreasonable as applied to J.L. and reverse the Board's imposition of this condition.

Void for Vagueness

We next consider whether the terms of any of the conditions challenged by J.L. violate due process under the void for vagueness doctrine. Specifically, J.L. contends that the terms "Internet-capable device," "social networking service," "frequenting establishments whose primary purpose is the sale of alcohol," and "sexually-oriented websites, material, information or data" are unconstitutionally vague and overbroad. We find that none of the challenged terms violate due process under the void for vagueness doctrine.

"A law is void if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" State, Twp. of Pennsauken v. Schad, 160 N.J. 156, 181 (1999) (quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983)). "The vagueness doctrine requires that laws that impose criminal penalties or impede First Amendment interests be strictly scrutinized." Id. at 182. Accordingly, a special condition of parole is reviewed for vagueness under strict scrutiny. Pazden v. N.J. State Parole Bd., 374 N.J. Super. 356, 370 (App. Div. 2005). Nonetheless, even under strict scrutiny, a rule may use "broad terms, provided it is controlled by a sufficient

A-0042-16T2

basic norm or standard. It need not be minutely detailed to cover every possible situation." Karins v. City of Atl. City, 152 N.J. 532, 542 (1998). In sum, "[a] law is void as a matter of due process if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Pazden, 374 N.J. Super. at 370-71 (alternation in original) (quoting Town Tobacconist, 94 N.J. at 118).

Applying these standards, we conclude that each term challenged by J.L. "is controlled by a sufficient basic norm or standard." Karins, 152 N.J. at 542. As to the term "Internet-capable device," common intelligence supports that the term means any device capable of accessing the Internet, whether it be a computer, cell phone, wristwatch, or other device.[17] As to the term "social networking service," the Board's regulations clearly define the terms "Social networking service," "Chat room," "Internet website or application," and "Peer-to-peer network." N.J.A.C. 10A:71-6.12(d)(25)(i) to (iv). As to the terms of the no-alcohol special condition, the second sentence of the provision reads, "I am to refrain from frequenting establishments whose primary purpose is the sale of alcohol (i.e. bars and liquor stores)." A plain reading of the provision and the

_____

[17] The relevant portion of the special condition states: "I am to refrain from the possession and/or utilization of any computer and/or device that permits access to the Internet unless specifically authorized by the District Parole Supervisor."

example indicates that the prohibition only applies to bars and liquor stores, not any establishment that sells alcohol.  Further, as discussed above, a plain reading of the term "sexually-oriented materials" and the corresponding definition in the special condition clearly indicates that the prohibition applies to any medium that contains any actual or simulated description or depiction of sexual intercourse, whether it be a movie, television show, novel, or pornographic website.

For these reasons, we conclude that none of the challenged terms violate due process under the void for vagueness doctrine.  To the extent that any of these conditions are overbroad as applied to an individual offender, that offender may seek that the Board grant an exception to the plain meaning of the condition and may in turn seek judicial review of the Board's decision.

Procedural Due Process

We next address J.L.'s contention that he was deprived procedural due process because the Board denied him a hearing during the administrative appeal.  Considering the factors in J.I., we find that the circumstances did not warrant a hearing.  Most notably, J.L.'s underlying offense involved using Facebook to lure a fourteen-year-old girl.  J.L. also did not have an extended period of compliance with the conditions of his supervision prior to the October

6, 2016 imposition of the special conditions at issue in this appeal. J.L. was released from a one-year term of incarceration for previous parole violations on May 31, 2016, so he had roughly a five-month period of compliance prior to the imposition of the special conditions. In this regard, the Board's delay in imposing the special conditions is not as egregious as the thirteen-month gap in J.I. See 228 N.J. at 232. Moreover, J.L. did not allege any factual disputes in the administrative appeal. For these reasons, we conclude J.L. was not entitled to a hearing in the administrative appeal.

Finally, as in C.C., we reject J.L.'s contention that he was entitled to discovery during the administrative appeal. While the Board provided J.L. only with an entirely redacted copy of the panel's decision sheet, J.L. had sufficient notice of the justifications for the imposition of the special conditions through the "Notice of Special Condition" forms he was provided when the conditions were imposed.

## D.C.

D.C. argues that the notify-computer and monitoring special conditions are both arbitrary and unreasonable, as well as unconstitutional, as applied to him. He also contends that the conditions were imposed upon him without

51

sufficient procedural due process. We agree that the notify-computer and monitoring special conditions are arbitrary and unreasonable as applied to D.C.

Internet-Access Conditions

Turning to the factors in J.I., we first emphasize that D.C. never used the Internet to commit any crimes. Additionally, as in K.G., the Board's primary justification for the imposition of the monitoring conditions is D.C.'s previous violations of the social-networking general condition in 2009, but the Board never provided a justification supporting that the social-networking condition was reasonably tailored when it was initially imposed. Moreover, using the monitoring software, the parole authorities have not detected any inappropriate Internet use by D.C. since the monitoring condition was imposed in 2010, significantly diminishing the need for the Board to continue monitoring D.C.'s Internet use.

Importantly, D.C. also presented the Board with evidence supporting the rehabilitative need for unrestricted Internet access based on his profession in the IT field. In his administrative appeal, D.C. certified, among other things, that: (1) his prospective work in the IT field would require the use of virtual machines that allowed access to other people's servers and computers, (2) running the Board's monitoring software on these machines would create a security risk for

52

clients and possibly interfere with the functioning of the virtual machines, and (3) he would necessarily use encryption software when working for clients. Although the Division of Parole has not yet required D.C. to install monitoring software on his work devices, we find that a parole officer's discretion to relax the monitoring special conditions does not remedy this unnecessary restriction.

In sum, the record reflects that D.C. did not use the Internet to commit an offense, the Board's monitoring detected no unauthorized Internet use in the seven years prior to its final agency decision, the Board has advanced no significant public safety concern to justify these conditions, and D.C. has presented a rehabilitative need for unrestricted Internet use. For these reasons, we hold that the notify-computer and monitoring special conditions are arbitrary and unreasonable as applied to D.C. and reverse the Board's imposition of these conditions.[18]

## C.

### (Summary of Conclusions)

In summary, in K.G., (A-0042-16), we reverse the Board's imposition of the no-Internet special condition, the monitoring special conditions, and the

---

[18] Having reversed the imposition of the conditions at issue, it is not necessary to address D.C.'s remaining arguments.

A-0042-16T2

social-networking general condition. In <u>C.C.</u>, (A-4339-16), we affirm the Board's imposition of all special conditions at issue. In <u>J.L.</u>, (A-4343-16), we affirm the Board's imposition of the social-networking general condition and the notify-computer special condition, remand for further consideration consistent with this opinion on the issue of the sexually-orientated materials special condition, and reverse the Board's imposition of the no-alcohol special condition. In <u>D.C.</u>, (A-4797-16), we reverse the Board's imposition of the notify-computer special condition and the monitoring special conditions.

We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION