SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**<u>C.A.L. v. State</u> (A-29-24) (089655)**

**Argued September 8, 2025 -- Decided January 27, 2026**

**JUSTICE WAINER APTER, writing for a unanimous Court.**

<u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), provides that when a plaintiff's civil rights claim necessarily impugns the validity of a criminal proceeding, the claim does not accrue until the criminal proceeding has been terminated in the plaintiff's favor. In this appeal, the Court considers whether that favorable-termination rule applies to claims brought under the New Jersey Civil Rights Act (CRA) and the New Jersey Tort Claims Act (TCA), and whether plaintiffs' claims made under those statutes were time-barred.

In 2005, C.A.L. was convicted of endangering the welfare of a child and placed on Parole Supervision for Life (PSL). The New Jersey State Parole Board imposed two special conditions on her parole: a ban on accessing social media and a ban on viewing or possessing pornography. In February 2018, C.A.L. was arrested on a parole warrant for alleged violations of both conditions. C.A.L. challenged both conditions as unconstitutional. The Parole Board found clear and convincing evidence that C.A.L. violated both conditions, revoked C.A.L.'s PSL, and ordered her to remain incarcerated for twelve months.

C.A.L. appealed to the Appellate Division. While that appeal was pending, the Appellate Division decided <u>K.G. v. State Parole Board</u>, 458 N.J. Super. 1 (App. Div. 2019), which held that all conditions restricting Internet access should be reasonably tailored to the individual offender. On February 6, 2020, the Parole Board vacated the 2018 revocation of C.A.L.'s PSL. It discharged the two conditions in April 2020. On June 1, 2020, the Parole Board issued a decision "find[ing] that clear and convincing evidence does not exist that [C.A.L.] violated" the conditions and that it "did not sustain any violation(s)."

On May 27, 2022, C.A.L. and her husband brought suit under the CRA and the TCA against the State, the Parole Board, and others. Counts One, Two, and Three of their complaint alleged a violation of C.A.L.'s substantive due process rights, gross negligence and failure to train, and deliberate indifference and failure to train. Count Four alleged false arrest/imprisonment. Defendants successfully

1

moved to dismiss all claims as time-barred. The trial court held that (1) the false arrest/imprisonment claim accrued in February 2019, when C.A.L. was released from imprisonment; (2) the failure to train and failure to supervise claims accrued in February 2018, when C.A.L. was arrested; and (3) the substantive due process claim accrued in January 2019, when K.G. was decided. The trial court found that even if Heck's favorable-termination rule applied, a favorable termination occurred on February 6, 2020, when the Board vacated C.A.L.'s PSL revocation. The Appellate Division affirmed but held that the false arrest/false imprisonment claim accrued on the date of C.A.L.'s arrest. The Court granted certification. 260 N.J. 13 (2025).

**HELD:** The Heck favorable-termination rule applies to civil rights claims brought under the CRA, or the CRA and TCA jointly, just as it does to claims brought under 42 U.S.C. § 1983. Counts One, Two, and Three of plaintiffs' complaint were timely filed because the claims accrued, and the statute of limitations began to run, on June 1, 2020. However, any claim for false arrest/imprisonment would have accrued before May 27, 2020, and Count Four was therefore correctly dismissed as untimely.

1. The CRA was designed as a State analog to the federal civil rights statute, 42 U.S.C. § 1983. The TCA governs damages claims against public entities. All claims in the complaint are governed by the two-year statute of limitations set forth in N.J.S.A. 2A:14-2(a). (pp. 14-17)

2. Here, the parties conflate the law of false arrest/imprisonment with the distinct claim for malicious prosecution. False imprisonment consists of detention without legal process. A claim for false arrest/false imprisonment will therefore not lie if the person was arrested pursuant to a warrant. Malicious prosecution, on the other hand, provides a remedy for harm caused by the institution or continuation of criminal process that is baseless. A malicious prosecution claim does not accrue until the allegedly wrongfully instituted or continued action is terminated in the plaintiff's favor. A claim of false arrest/false imprisonment accrues once the individual becomes detained pursuant to legal process. (pp. 17-20)

3. In Heck, the United States Supreme Court considered "whether a state prisoner may challenge the constitutionality of his [state] conviction in a suit for damages under" Section 1983 while his criminal appeal was pending. 512 U.S. at 478. Explaining that the action would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," id. at 486, the Heck Court held that a Section 1983 cause of action for damages attributable to an unconstitutional conviction or sentence "does not accrue until the conviction or sentence has been invalidated," id. at 490. In later cases, the U.S. Supreme Court refused to extend the accrual principles of Heck to claims of false arrest but did apply them to claims of fabricated evidence, distinguishing false arrest claims from claims that directly challenge and thus necessarily threaten to impugn the prosecution itself. (pp. 20-24)

2

4.  The Court holds that the <u>Heck</u> favorable-termination rule applies to claims brought under the CRA and the TCA in the same way it applies to claims brought under Section 1983.  <u>Heck</u>'s favorable-termination requirement serves several salutary purposes:  (1) it avoids parallel litigation in civil and criminal proceedings; (2) it precludes the inconsistent civil and criminal judgments that would occur if a plaintiff were to succeed in the tort action after having been convicted in the criminal case; and (3) it prevents civil suits from being improperly used as collateral attacks on criminal proceedings.  If a plaintiff challenges a criminal proceeding brought pursuant to legal process in a civil suit for damages under the CRA or TCA, no cause of action will accrue, and the claim cannot be brought, until the criminal proceeding has been terminated in the plaintiff's favor.  If, however, a plaintiff brings a cause of action that does not attack a criminal proceeding undertaken pursuant to legal process, no favorable-termination rule applies.  (pp. 24-26)

5.  Here, because Counts One, Two, and Three allege the wrongful initiation of legal process and necessarily impugn the validity of the parole revocation proceedings against C.A.L., <u>Heck</u>'s favorable-termination rule applies.  Any civil court holding that the two special conditions were unconstitutional, either on their face or as applied to C.A.L., would plainly invalidate the parole proceeding against C.A.L. for violating those conditions.  The Parole Board contends that plaintiffs' claims are still time-barred because the February 6, 2020 decision or the discharge of the two special conditions in April 2020 constitute a favorable termination of C.A.L.'s parole proceedings.  But the finding that C.A.L. had violated special conditions of her parole was not vacated until June 1, 2020, and only the June 1, 2020 decision allowed C.A.L. to collaterally attack the constitutionality of the conditions in a civil case.  Therefore, Counts, One, Two, and Three did not accrue until June 1, 2020.  Because plaintiffs' complaint was filed on May 27, 2022, all three were timely filed.  The Court reverses the dismissal of those three counts.  (pp. 26-30)

6.  As to Count Four, it is not clear from the record whether C.A.L. was arrested pursuant to legal process.  Nonetheless, the statute of limitations on a claim for false arrest/imprisonment begins to run when "legal process" commences, and legal process for C.A.L. clearly commenced long before May 27, 2020, two years before plaintiffs filed the complaint.  Therefore, even if C.A.L. could state a claim for false arrest/imprisonment because she was arrested and detained for some period without legal process, that claim was correctly dismissed as untimely.  The Court affirms the dismissal of Count Four.  (pp. 30-32)

**AFFIRMED in part and REVERSED in part.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE WAINER APTER's opinion.**

3

C.A.L. and C.T.,

Plaintiffs-Appellants,

v.

State of New Jersey, New
Jersey State Parole Board,
Gurbir S. Grewal, individually
and in his official capacity,
Matthew J. Platkin,
individually and in his official
capacity, Samuel J. Plumeri,
Jr., individually and in his official
capacity, Robert M. Goodale,
individually and in his official
capacity, Robert H. Balicki,
individually and in his official
capacity, Kerri Cody,
individually and in her official
capacity, Allen DelVento,
individually and in his official
capacity, Thomas Haaf,
individually and in his official
capacity, James B. Jefferson,
individually and in his official
capacity, Charlie Jones,
individually and in his official
capacity, Julio Marenco,
individually and in his official
capacity, Robert
Riccardella, individually and
in his official capacity, Ronald
L. Slaughter, individually and

1

in his official capacity, Trudy M. Steinhardt, individually and in her official capacity, Clarence K. Taylor, individually and in his official capacity, John Paitakes, individually and in his official capacity, Kenneth L. Saunders, individually and in his official capacity, Steven T. Yglesias, individually and in his official capacity, Steven Tallard, individually and in his official capacity, Senior Parole Officer Alicia Grippaldi, individually and in her official capacity, Lieutenant Raquel Ortiz, individually and in her official capacity,

Defendants-Respondents.

On certification to the Superior Court, Appellate Division.

Argued
September 8, 2025

Decided
January 28, 2026

James H. Maynard argued the cause for appellants (Maynard Law Office, attorneys; James H. Maynard, on the briefs).

Phoenix N. Meyers, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park and Janet Greenberg Cohen, Assistant Attorneys General, of counsel, and Christopher C. Josephson and Robert J. McGuire, Deputy Attorneys General, on the briefs).

2

Oliver T. Barry submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Barry, Corrado & Grassi, attorneys; Oliver T. Barry, on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

Heck v. Humphrey, 512 U.S. 477 (1994), provides that when a plaintiff's civil rights claim necessarily impugns the validity of a criminal proceeding, the claim does not accrue until the criminal proceeding has been terminated in the plaintiff's favor. This case requires us to determine whether that rule applies to claims brought under the New Jersey Civil Rights Act (CRA) and the New Jersey Tort Claims Act (TCA).

We hold that the rule applies to civil rights claims brought under the CRA, or the CRA and TCA jointly, just as it does to claims brought under 42 U.S.C. § 1983. We therefore hold that Counts One, Two, and Three of plaintiffs' complaint were timely filed because the claims accrued, and the statute of limitations began to run, on June 1, 2020. The same is not true for Count Four.

We affirm in part and reverse in part the judgment of the Appellate Division.

I.

A.

In 2005, plaintiff C.A.L. was convicted of endangering the welfare of a child in violation of N.J.S.A. 2C:24-4(a). She was sentenced to a suspended five-year prison term and placed on Parole Supervision for Life (PSL).

In 2007, the New Jersey State Parole Board voted to create a special condition applicable to all individuals on PSL, barring them from accessing social media. The condition stated:

> I shall refrain from using any computer and/or device to create any social networking profile or to access any social networking service or chat room (including but not limited to MySpace, Facebook, Match.com, Yahoo 360) in my own name or any other name for any reason unless expressly authorized by the District Parole Supervisor.[1]

---

[1] In 2010, the Board codified the condition in a regulation requiring that offenders "[r]efrain from using any computer and/or device to create any social networking profile or to access any social networking service or chat room in the offender's name or any other name for any reason unless expressly authorized by the district parole supervisor." N.J.A.C. 10A:71-6.12(d)(24) (2010). The Board suspended "enforcement and imposition" of the condition on all individuals on PSL on January 29, 2020, but continued to impose it on a case-by-case basis. 53 N.J.R. 211(a) (Feb. 16, 2021). The regulation was removed from the administrative code on August 16, 2021. See N.J.A.C. 10A:71-6.12(d) (2021).

4

In early 2009, C.A.L.'s parole officer found "excessive amounts of adult pornographic material" at C.A.L.'s home. The Parole Board then imposed a second special condition on C.A.L. It provided, in part:

> I am to refrain from viewing or possessing a picture, photograph, negative, film, movie, videotape, DVD, CD, CD-ROM, streaming video, computer generated or virtual image or other representation, publication, sound recording or live performance that is predominately [oriented] to descriptions or depictions of sexual activity . . . .

On February 9, 2018, C.A.L. was arrested on a parole warrant for alleged violations of both special conditions. Counsel for C.A.L. argued that the first special condition was unconstitutional under Packingham v. North Carolina, 582 U.S. 98 (2017), and the second special condition was unconstitutional under Miller v. California, 413 U.S. 15 (1973).[2]

---

[2]  In Packingham, the United States Supreme Court held that a North Carolina statute that made it a felony for a registered sex offender to access certain social media sites violated the First Amendment's Free Speech Clause. 582 U.S. at 101, 109. The Court assumed that the statute was content neutral. Id. at 105. It therefore assessed whether the law was "narrowly tailored to serve a significant governmental interest" or whether it "burden[ed] substantially more speech than is necessary to further the government's legitimate interests.'" Id. at 105-06 (quoting McCullen v. Coakley, 573 U.S. 464, 486 (2014)). North Carolina asserted an interest in "keeping convicted sex offenders away from vulnerable victims." Id. at 108. But the Court found that the law was not narrowly tailored to serve that purpose because it "foreclose[d] access to social media altogether," preventing registered sex offenders "from engaging in the legitimate exercise of First Amendment rights." Ibid.

After conducting a hearing on May 30, 2018, the hearing officer submitted a report on June 5, 2018, finding clear and convincing evidence that C.A.L. had violated both special conditions. He therefore "sustained" the violations. Concluding the violations were serious, he recommended that C.A.L.'s PSL status be revoked and that she remain incarcerated for twelve months. The report did not discuss the constitutionality of either condition.

C.A.L.'s attorney objected to the hearing officer's report, again arguing that the special conditions were unconstitutional under Packingham and Miller. On June 20, 2018, a two-member panel of the Board issued a Notice of Decision. The panel found clear and convincing evidence that C.A.L. violated both special conditions. It found that the violations were serious and that revocation of C.A.L.'s parole was desirable. It therefore revoked C.A.L.'s PSL and ordered her to remain incarcerated for twelve months. The decision again did not address the constitutionality of either condition.

---

In Miller, the Supreme Court considered when, consistent with the First Amendment, states may regulate "obscene, pornographic material." 413 U.S. at 19-20, 22. It held that state statutes regulating obscenity or adult pornography must be "limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." Id. at 24.

C.A.L. appealed to the full Parole Board. The Board distinguished Packingham, stating that it concerned sex offenders who were not under parole supervision. It did not discuss Miller. The Board found clear and convincing evidence that C.A.L. seriously violated the conditions of her parole. It therefore affirmed the PSL revocation and the prison term on October 31, 2018.

C.A.L. appealed to the Appellate Division. On January 24, 2019, while the appeal was pending, the Appellate Division decided K.G. v. State Parole Board, 458 N.J. Super. 1 (App. Div. 2019). Although it did not explicitly reach the constitutionality of either condition under the First Amendment, the Appellate Division in K.G. held that "all conditions restricting Internet access . . . should be reasonably tailored to the circumstances of the individual offender," including "'the underlying offense and any prior criminal history, whether the Internet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety.'" 458 N.J. Super. at 13 (quoting J.I. v. State Parole Board, 228 N.J. 204, 224 (2017)). The Appellate Division determined that the social media condition was "arbitrary, capricious, and unreasonable as applied to [plaintiff] K.G.," but not as applied to plaintiff J.L. Id. at 34-37, 40. It remanded the "condition restricting [plaintiff] J.L.'s access to sexually-oriented materials" to the Parole

Board "to consider whether a less restrictive pornography condition . . . can adequately protect the public safety." Id. at 41.

On February 9, 2019, C.A.L. finished serving her twelve-month prison term and was released. The Parole Board reimposed both special conditions.

In November 2019, the Parole Board moved before the Appellate Division to remand C.A.L.'s appeal so that it could "reconsider if there is clear-and-convincing evidence that [C.A.L.] committed serious violations of the two special conditions." The Board argued that "[t]o the extent that [C.A.L.] is challenging the imposition of the special conditions in the first instance, her challenge is not properly before this court because she has not sought relief through the proper administrative channels." A remand, the Parole Board contended, would allow C.A.L. to "challenge the imposition of the special conditions of her probation through the proper administrative channels."[3] The Appellate Division granted the Board's motion.

On February 6, 2020, a two-member panel of the Board issued a notice of decision that reads in full:

---

[3] At oral argument, counsel for the Board acknowledged that "plaintiff argued throughout her Parole Board hearing that the [two special] conditions that she was subjected to were unconstitutional on their face." That is correct. It is therefore unclear why the Board told the Appellate Division that C.A.L. had "not sought relief through the proper administrative channels" and was challenging the constitutionality of the conditions for the first time on appeal.

8

> Be advised that on February 5, 2020, based on the determination of the Superior Court -- Appellate Division to remand the matter of the State Parole Board's Final Decision for reconsideration, the Board panel vacated the June 20, 2018 determination to revoke your parole supervision for life status and establish a twelve (12) month incarceration term. On February 5, 2020, based on a review of your case, the Board panel determined to continue you on parole supervision for life status.

C.A.L. appealed to the full Board, requesting that the Board vacate its prior finding that she had violated both special conditions and find that both had been unconstitutionally imposed on her.

The Parole Board discharged C.A.L.'s social media condition on April 13, 2020. It discharged the sexual material condition on April 21, 2020.

On June 1, 2020, the same two-member panel issued an amended notice of decision. It reads:

> Be advised that on June 1, 2020, the Board panel reconsidered your case as a result of the revocation hearing conducted on May 30, 2018. The Board panel finds that clear and convincing evidence does not exist that you violated the [two special conditions.] <u>The Board panel did not sustain any violation(s)</u> and decided that revocation is not desirable. Accordingly, the Board panel has rendered the following determination: Parole supervision for life status is hereby not revoked. You are continued on parole supervision for life status.
>
> [(emphasis added).]

On May 7, 2021, C.A.L. was discharged from PSL.

9

## C.

On May 27, 2022, C.A.L. and her husband C.T. sued the State of New Jersey, the Parole Board, the Attorney General, the Chairman of the Parole Board, and others.  They alleged that the two special conditions were unconstitutional under Packingham and Miller, and that C.A.L.'s arrest and imprisonment for violating them was therefore unconstitutional.

In the complaint, plaintiffs asserted three claims under both the New Jersey Civil Rights Act and the New Jersey Torts Claims Act:  violation of C.A.L.'s substantive due process right to be free from unconstitutional arrest, detention, and incarceration because the special conditions that C.A.L. was arrested, detained, and incarcerated for violating were themselves unconstitutional (Count One); gross negligence and failure to train against the Attorney General and others, alleging they were on notice that the special conditions were unconstitutional and failed to train the Parole Board and its employees that they therefore could not arrest or incarcerate people for violating them (Count Two); and false arrest/false imprisonment, alleging that defendants "lacked probable cause to arrest, detain, or incarcerate [C.A.L.] as she had committed no crime and had violated no constitutionally imposed condition of supervision" (Count Four).

The complaint also included one count brought only under the CRA: deliberate indifference and failure to train against the Attorney General and others, again alleging they were on notice that the special conditions were unconstitutional and yet failed to train the Board and its employees that they could not arrest or incarcerate people for violating them (Count Three). Plaintiffs sought declarations that the special conditions were unconstitutional and requested money damages, including punitive damages on Counts One and Three.

Defendants moved to dismiss. The trial court granted defendants' motion, determining that "regardless of whether [plaintiffs'] claims are characterized as civil rights violations or as common law claims," plaintiffs "failed to file within the two-year statute of limitations." The trial court held that (1) the false arrest/false imprisonment claim accrued on the date C.A.L. was released from imprisonment, February 9, 2019; (2) the failure to train and failure to supervise claims accrued on the date C.A.L. was arrested, February 9, 2018; and (3) the substantive due process claim accrued on January 24, 2019, the date the Appellate Division decided K.G.

The court found that even if Heck's favorable-termination rule applied, a favorable termination of C.A.L.'s parole proceeding occurred on February 6, 2020, when the two-member Board panel vacated C.A.L.'s PSL revocation.

11

The trial court therefore did not reach defendants' arguments that they were entitled to absolute or qualified immunity, or that plaintiffs did not comply with the TCA's notice requirements.

The Appellate Division affirmed. It held that plaintiffs' false arrest/false imprisonment claim accrued on the date of C.A.L.'s arrest, not the date of her release. The Appellate Division agreed with the trial court that the failure to train and supervise claims accrued on the date of arrest, and that the substantive due process claim accrued on January 24, 2019.

The Appellate Division acknowledged plaintiffs' argument that "an individual cannot pursue civil rights claims for detention and incarceration in violation of their constitutional rights until the prior [criminal] proceeding is terminated in the individual's favor." But it held that even if it were to apply such a rule, "[t]he February 6, 2020 decision was tantamount to a favorable termination" because the Board "vacated its prior decision revoking C.A.L.'s PSL and sentencing her to one year in prison for violating the [two] Special Conditions. Thus, it was the February 6, 2020 notice of decision that vacated the sentence and triggered the accrual of any cause of action . . . ."

We granted plaintiffs' petition for certification. 260 N.J. 13 (2025). We also granted leave to appear as amicus curiae to the New Jersey Association for Justice (NJAJ).

12

Plaintiffs argue that none of their claims are time-barred. According to plaintiffs, Heck's favorable-termination rule applies to all of their claims because all challenge the lawfulness of C.A.L.'s parole violation proceedings. As plaintiffs explain, there was "a finding of guilt by the Parole Board, which would have been called into question had C.A.L. been successful in proving that the supervision conditions upon which her arrest, detention, and revocation were based, were unconstitutional." And no favorable termination of C.A.L.'s parole proceedings occurred until June 1, 2020, plaintiffs contend, because the Board's February 6, 2020 decision "only removed the punishment that was imposed" on C.A.L. -- it "did nothing to remove from the record of the parole proceeding the prior finding that she had 'seriously or persistently violated the conditions of parole.'" (quoting N.J.A.C. 10A:71-7.12(c)(1)).

Defendants argue that all of plaintiffs' claims are time-barred. They contend that under both New Jersey common law and federal law, a claim for false arrest/false imprisonment accrues when "the claimant becomes detained pursuant to legal process" and is not subject to any favorable-termination rule. (quoting Wallace v. Kato, 549 U.S. 384, 397 (2007)). Although defendants concede that "the Heck favorable-termination rule would have applied if [plaintiffs'] complaint had advanced a malicious-prosecution claim," it did not.

Moreover, defendants maintain, plaintiffs' constitutional "claims did not rise or fall depending on the outcome of the Board proceedings because C.A.L.'s goal was not to undo a conviction or sentence, but rather to have a condition declared unconstitutional." In the alternative, defendants argue that even if Heck applies, "the Board's February 6, 2020 decision -- which vacated [the 2018] decision . . . undeniably was a 'favorable termination.'"

NJAJ argues that plaintiffs' substantive due process claim is similar to a claim for malicious prosecution, and that not applying Heck's favorable-termination rule would "create[] a risk of inconsistent outcomes in the underlying criminal or administrative action and a civil action for damages." The two-member panel's February 6, 2020, decision does not constitute a favorable termination, NJAJ contends, because it did not "address whether [C.A.L.] violated parole." The substantive due process claim therefore accrued on June 1, 2020, NJAJ maintains, when the Parole Board "provided a decision representing a favorable termination on the merits."

## III.

We review a trial court's grant of a motion to dismiss de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021).

14

A.

Here, plaintiffs bring claims under the CRA and the TCA. We therefore briefly discuss each statute.

The CRA, enacted in 2004, "was designed as a 'State analog to the federal civil rights statute codified at 42 U.S.C.A. [§] 1983.'" Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014) (alteration in original) (quoting Governor's Statement on Signing A. 2073 (Sept. 10, 2004)). It allows

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, . . . by a person acting under color of law, [to] bring a civil action for damages and for injunctive or other appropriate relief [in Superior Court].
>
> [N.J.S.A. 10:6-2(c) to (d).]

The Federal and State Constitutions both protect against deprivations of liberty without due process of law. U.S. Const. amend. XIV, § 1; N.J. Const. art. I, ¶ 1; Jamgochian v. State Parole Bd., 196 N.J. 222, 239 (2008). Both constitutions "cover a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)); State in Int. of C.K., 233 N.J. 44, 73 (2018) ("Although our State Constitution nowhere expressly states that every

15

person shall be entitled to substantive due process of law, the expansive language of Article I, Paragraph 1 embraces that fundamental guarantee.").

Substantive due process violations are actionable under both Section 1983, Zinermon v. Burch, 494 U.S. 113, 124-25 (1990), and the CRA, N.J.S.A. 10:6-2(c); see also Gormley v. Wood-El, 218 N.J. 72, 97-98 (2014).

The TCA governs damages claims against public entities. See D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 146 (2013). It declares the policy of this State that "public entities shall only be liable for their negligence within the limitations of this act." N.J.S.A. 59:1-2. It also provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law" except that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. 59:3-3. It specifies that "[i]f a public employee acts under the apparent authority of a law that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the law been constitutional, valid and applicable." N.J.S.A. 59:3-4. Similarly, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.S.A. 59:3-8.

16

The CRA does not specify when a cause of action under the statute accrues. See N.J.S.A. 10:6-2. Neither does the TCA. See N.J.S.A. 59:8-1 ("Accrual shall mean the date on which the claim accrued and shall not be affected by the notice provisions contained herein.").

The parties agree that all claims in the complaint are governed by the two-year statute of limitations set forth in N.J.S.A. 2A:14-2(a) ("Except as otherwise provided by law, every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued . . . ."). The question for us is when each of plaintiffs' causes of action accrued.

### B.

Plaintiffs' complaint includes a claim for false arrest/imprisonment. However, the parties conflate the law of false arrest/imprisonment with the distinct claim for malicious prosecution. We therefore review each.

Under federal law, a claim for false arrest "attacks [an] arrest only to the extent it was without legal process, even if legal process later commences." McDonough v. Smith, 588 U.S. 109, 122 (2019). Therefore, "[i]f there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." Heck, 512 U.S. at 484

17

(quoting Prosser and Keeton on Torts § 119 at 888 (5th ed. 1984)). A claim for false imprisonment likewise "consists of detention without legal process." Wallace, 549 U.S. at 389.

The same is true under New Jersey law, where "false arrest and false imprisonment are not separate torts; they are different names for the same tort." Price v. Phillips, 90 N.J. Super. 480, 484 (App. Div. 1966). "The gist of the action" for both "is an unlawful detention. The essential thing is the constraint of the person, without legal justification." Pine v. Okzewski, 112 N.J.L. 429, 431 (E. & A. 1934).

Because "false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process -- when, for example, he is bound over by a magistrate or arraigned on charges." Wallace, 549 U.S. at 389. Thereafter, any "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Id. at 390.

A claim for false arrest/false imprisonment will therefore not lie if the person was arrested pursuant to a warrant. See Genito v. Rabinowitz, 93 N.J. Super. 225, 228 (App. Div. 1966) ("The malicious filing of a false complaint which causes the issuance of a warrant upon which one is arrested does not

18

give rise to a cause of action for false imprisonment. The action must be one for malicious prosecution."); see also Wallace, 549 U.S. at 389 ("[T]he allegations before us arise from respondents' detention of petitioner without legal process in January 1994. They did not have a warrant for his arrest."). That is so because an arrest warrant is the institution of legal process and "[f]rom that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process." Id. at 390 (quoting Prosser and Keeton on Torts § 119 at 888).

Malicious prosecution, on the other hand, "provides a remedy for harm caused by the institution or continuation of" criminal process "that is baseless." LoBiondo v. Schwartz, 199 N.J. 62, 89 (2009). A "Fourth Amendment claim under § 1983 for malicious prosecution" is therefore "sometimes referred to as a claim for unreasonable seizure pursuant to legal process." Thompson v. Clark, 596 U.S. 36, 42 (2022). "[T]he gravamen" of such a claim "is the wrongful initiation of" criminal charges with legal process but "without probable cause." Id. at 43.

A claim for malicious prosecution requires a "plaintiff to prove four elements: (1) a criminal action was instituted by [the] defendant against [the] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the

19

plaintiff." LoBiondo, 199 N.J. at 90. A malicious prosecution claim, therefore, does not accrue until the criminal action that the plaintiff alleges was wrongfully instituted or continued against him is terminated in his favor. Ibid.; see also Thompson, 596 U.S. at 44. For a claim of false arrest/false imprisonment brought under § 1983, on the other hand, the statute of limitations begins to run once the individual "becomes detained pursuant to legal process." Wallace, 549 U.S. at 397.

C.

We now turn to Heck v. Humphrey, which lies at the center of this case. In Heck, the United States Supreme Court considered "whether a state prisoner may challenge the constitutionality of his [state] conviction in a suit for damages under" Section 1983. 512 U.S. at 478. The petitioner was convicted of voluntary manslaughter. Ibid. While his criminal appeal was pending, he sued the prosecutors and police officers in federal court, alleging an "unlawful, unreasonable, and arbitrary investigation," destruction of evidence, and more. Id. at 479.

The Supreme Court explained that malicious prosecution provided the "closest analogy" to the petitioner's claims because "unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process." Id. at 484. It

20

detailed how, in malicious prosecution cases, the important requirement that a plaintiff prove "termination of the prior criminal proceeding in [his] favor" before a civil cause of action accrued serves two purposes. Ibid. It "'avoids parallel litigation'" over the person's guilt or innocence, and "'precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" Ibid. (quoting 8 Stuart M. Speiser et al., American Law of Torts § 28:5, ¶ 24 (1991)).

The Court reasoned:

> We think the . . . principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.
>
> [Id. at 486.]

The Court therefore held that a claim for monetary damages that would challenge an extant criminal conviction is not "cognizable under § 1983." Id. at 483. Instead, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff

21

must prove that the conviction or sentence has been reversed" on appeal or otherwise invalidated. Id. at 486-87 (footnote omitted). Pursuant to that rule, "[j]ust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90 (citation omitted).

The Supreme Court refused to extend the accrual principles of Heck in Wallace v. Kato. There, the petitioner was arrested without a warrant in January 1994. After his conviction was reversed and the criminal charges were dropped, he filed a Section 1983 action for false arrest in 2003. 549 U.S. at 386, 389. The Court concluded that the statute of limitations on petitioner's false arrest claim began to run on "the date petitioner became held pursuant to legal process," i.e., "when he appeared before the . . . magistrate and was bound over for trial." Id. at 391, 393. It declined to extend Heck to plaintiff's claim, because doing so would "require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict." Id. at 393. The Court therefore held "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation

22

of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Id. at 397.

Most recently, in McDonough v. Smith, the Court applied the Heck rule to a Section 1983 claim for fabricated evidence. Although the Court noted that petitioner's malicious prosecution claim had been dismissed as barred by prosecutorial immunity, 588 U.S. at 113, it analogized the fabricated evidence claim to a claim for malicious prosecution because both "challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process,'" id. at 116-17 (quoting Heck, 512 U.S. at 484). It therefore held that petitioner's claim did not accrue "until favorable termination of the challenged criminal proceedings," -- i.e., when the petitioner was tried and acquitted. Id. at 114.

The Court emphasized the practical problems that would stem from "allowing collateral attacks on criminal judgments through civil litigation." Id. at 118. Although there was no criminal conviction at issue in McDonough -- the petitioner was acquitted of all charges -- the fabricated evidence claim "challenge[d] the validity of the criminal proceedings against [the petitioner] in essentially the same manner" as the claim in Heck. Id. at 119. Therefore, the Court held that a "fabricated-evidence challenge to criminal proceedings" does not accrue "while those criminal proceedings are ongoing. Only once the

23

criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of Heck, will the statute of limitations begin to run." Id. at 119-20 (citation omitted).

The Court explained that its holding was consistent with Wallace because a "false-arrest claim . . . has a life independent of an ongoing" criminal proceeding, whereas a fabricated-evidence claim "directly challenges -- and thus necessarily threatens to impugn -- the prosecution itself." Id. at 122; see also Coello v. DiLeo, 43 F.4th 346, 354 (3d Cir. 2022) (explaining that because the plaintiff's claims were premised on the allegation "that her criminal proceedings were begun and conducted unlawfully" and there was "'no logical way to reconcile [those] claims with a valid conviction,'" they fell "in Heck's sphere" and "could not have accrued unless and until Coello's state criminal proceedings were resolved in her favor" (quoting Savory v. Cannon, 947 F.3d 409, 417 (7th Cir. 2020) (en banc))); Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 293 (App. Div. 2010) ("[I]f plaintiff's proofs regarding the alleged § 1983 violation do not seek to invalidate any element of the underlying criminal conviction, the complaint is not barred . . . by Heck.").

IV.

A.

Applying that framework, we hold that the Heck favorable-termination rule applies to claims brought under the New Jersey Civil Rights Act and the New Jersey Tort Claims Act in the same way that it applies to claims brought under Section 1983: When a plaintiff's claim "necessarily" impugns the validity of a criminal proceeding, it does not accrue until the criminal proceeding against plaintiff terminates "in his favor." McDonough, 588 U.S. at 121.

As the United States Supreme Court has noted, Heck's favorable-termination requirement serves several salutary purposes: (1) "it avoids parallel litigation in civil and criminal proceedings"; (2) "it precludes [the] inconsistent civil and criminal judgments" that would occur if a plaintiff were to "succeed in the tort action after having been convicted in the criminal case"; and (3) "it prevents civil suits from being improperly used as collateral attacks on criminal proceedings." Thompson, 596 U.S. at 44. Those three considerations guide our decision here.

We have previously interpreted the CRA to be consonant with Section 1983. See, e.g., Morillo v. Torres, 222 N.J. 104, 116 (2015) (describing the CRA as "New Jersey's analogue to a Section 1983 action" and noting that

25

"[f]or purposes of analyzing" qualified immunity "the examination for both [Section 1983 and the CRA] is the same"); Perez, 218 N.J. at 215-16 (holding that the "under color of law" requirement in the CRA should be interpreted as it is for Section 1983). Given the CRA's "broad remedial purpose," Owens v. Feigin, 194 N.J. 607, 614 (2008), as a state analogue to Section 1983, we conclude that Heck's favorable-termination requirement applies to claims brought under the CRA, and to claims brought jointly under the CRA and TCA, just as it does to claims brought under Section 1983.[4]

A plaintiff may not use a civil suit to collaterally attack a criminal proceeding. If a plaintiff challenges a criminal proceeding brought pursuant to legal process in a civil suit for damages under the CRA or TCA, no cause of action will accrue, and the claim cannot be brought, until the criminal proceeding has been terminated in the plaintiff's favor. If, however, a plaintiff brings a cause of action that does not attack a criminal proceeding undertaken pursuant to legal process, no favorable-termination rule applies.

B.

We now apply that rule to plaintiffs' complaint.

---

[4] We have previously held that the TCA's notice-of-claim requirement, which generally obliges a prospective claimant to notify the public entity "within 90 days of accrual" of the claim, N.J.S.A. 59:8-8(a), does not apply to claims brought under the CRA. See Owens, 194 N.J. at 613-14.

26

Counts One, Two, and Three allege a violation of C.A.L.'s substantive due process rights, gross negligence and failure to train, and deliberate indifference and failure to train. All three allege that the two special conditions that C.A.L. was accused of violating were "unconstitutional under Packingham and Miller," and that C.A.L.'s arrest and incarceration were therefore unconstitutional. Because these claims allege the wrongful initiation of legal process and necessarily impugn the validity of the parole revocation proceedings against C.A.L., Heck's favorable-termination rule applies.

At oral argument, the Board readily conceded that the crux of plaintiffs' complaint is that the two special conditions she was found to have violated were unconstitutional under the First Amendment. The Board also agreed that "Heck applies in any instance when the . . . civil court would in effect invalidate the criminal proceeding." However, the Board argued that "plaintiff did not need to await a favorable termination to bring her constitutional claims" because "the root of plaintiff's claim is that the special conditions themselves were unconstitutional."

The Board misses the mark. A holding that the two special conditions plaintiff was accused of violating were unconstitutional would necessarily render the parole proceeding against her for violating them unconstitutional. See, e.g., Ex parte Siebold, 100 U.S. 371, 376-77 (1879) ("An unconstitutional

27

law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment."); Montgomery v. Louisiana, 577 U.S. 190, 201 (2016) ("[W]hen a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful."). Therefore, any civil court holding that the two special conditions were unconstitutional, either on their face or as applied to C.A.L., would plainly invalidate the parole proceeding against C.A.L. for violating those conditions. Heck's favorable-termination rule thus applies.

The Parole Board contends that plaintiffs' claims are still time-barred because either the Board's February 6, 2020 decision, or the Board's discharge of the two special conditions on April 13 and April 21, 2020, constitute a favorable termination of C.A.L.'s parole proceedings. It points to Thompson v. Clark, in which the Supreme Court held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." 596 U.S. at 39.

In that case, Larry Thompson was arrested and charged with resisting arrest. Id. at 40. The prosecution moved to dismiss the charges, and the trial court did so. Ibid. Thompson then brought a claim for damages under Section

28

1983, alleging, among other things, a Fourth Amendment claim for malicious prosecution. Ibid. The district court found that Thompson could not show a favorable termination because his "criminal case had not ended in a way that affirmatively indicated his innocence." Id. at 41. The Supreme Court held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." Id. at 49.

Thompson does not help the Parole Board, because C.A.L.'s parole "prosecution" did not end without a "conviction." Instead, it ended with a finding that C.A.L. had violated both special conditions of her parole. That finding was not vacated until June 1, 2020.

On its face, the two-member panel's February 6, 2020 notice of decision "vacated the June 20, 2018 determination to revoke [C.A.L.'s] parole supervision for life status and establish a twelve (12) month incarceration term" and "determined to continue [C.A.L.] on parole supervision for life status." The notice of decision said nothing about C.A.L.'s parole violations. It seemingly left in place the hearing officer's June 5, 2018 report finding clear and convincing evidence that C.A.L. had violated both special conditions of her parole; the two-member panel's finding of clear and convincing evidence

29

that C.A.L. violated those conditions; and the full Board's finding of clear and convincing evidence that C.A.L. violated the conditions of her parole.  The Board's April 13, 2020 and April 21, 2020 discharge of C.A.L.'s special conditions likewise say nothing about whether C.A.L. had previously violated those conditions.  It was not until the June 1, 2020 amended notice of decision that the two-member panel stated:  "The Board panel finds that clear and convincing evidence does not exist that you violated" the two special conditions and "[t]he Board panel did not sustain any violation(s)."  Therefore, it was only that decision that vacated the prior findings that C.A.L. had violated the conditions of her parole.  And it was only that decision that allowed C.A.L. to collaterally attack the constitutionality of those conditions in a civil case.

We therefore hold that Counts One, Two, and Three of plaintiffs' complaint did not accrue until June 1, 2020.  Because plaintiffs' complaint was filed on May 27, 2022, all three were timely filed.  We reverse the Appellate Division's dismissal of those three counts.

The same conclusion does not apply to Count Four, plaintiffs' claim under the CRA and the TCA for false arrest/false imprisonment.

As noted above, see supra, Section III.B., a person who is arrested pursuant to a warrant and detained pursuant to legal process cannot bring a

30

claim for false arrest/false imprisonment; they can only bring a claim for malicious prosecution.  See, e.g., Genito, 93 N.J. Super. at 228; McDonough, 588 U.S. at 122; Heck, 512 U.S. at 484; Wallace, 549 U.S. at 389-90.  And for a plaintiff who brings a claim for false arrest/false imprisonment based on an arrest without a warrant, they can pursue damages only for the period in which they were detained without legal process, and the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process." Wallace, 549 U.S. at 397.

Here, it is not clear whether C.A.L. was arrested pursuant to "legal process."  C.A.L.'s complaint alleges that she was "taken into custody on a parole warrant."  It appears that the parole warrant was signed by a parole officer, not a judge.  See N.J.S.A. 30:4-123.62.  It is not clear whether such a warrant would constitute "legal process," and C.A.L. may therefore have been arrested and detained for some period without legal process.[5]

Nonetheless, the statute of limitations on a claim for false arrest/false imprisonment begins to run when "legal process" commences, and despite the lack of information in the record, legal process for C.A.L. clearly commenced long before May 27, 2020, two years before plaintiffs filed the complaint.

---

[5]  If the warrant did constitute "legal process," then plaintiffs should have alleged malicious prosecution rather than false arrest.

31

Therefore, even if C.A.L. could state a claim for false arrest/false imprisonment because she was arrested and detained for some period without legal process, that claim accrued before May 27, 2020, and Count Four was correctly dismissed as untimely.

We therefore affirm the Appellate Division's dismissal of Count Four.

## V.

For the reasons stated, we affirm the Appellate Division's dismissal of Count Four of plaintiffs' complaint and reverse the dismissal of Counts One, Two, and Three of plaintiffs' complaint.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE WAINER APTER's opinion.

32